UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY M. LYNCH,

                              Plaintiff,

                                                    DECISION AND ORDER

                                                    12-CV-6095L

              v.

NATIONAL FUEL GAS DISTRIBUTION CORPORATION,


                              Defendant.
_____

          Plaintiff Mary Lynch ("plaintiff") brings this action alleging gender-based discrimination and

retaliation against her former employer, National Fuel Gas Distribution Corporation ("National

Fuel"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII")

and the New York State Human Rights Law, N.Y. Exec. Law §290 et seq. ("NYHRL").  National

Fuel now moves for summary judgment dismissing plaintiff's claims (Dkt. #15).  For the reasons

that follow, National Fuel's motion is granted, and the complaint is dismissed.


                                         **FACTS**

          Plaintiff began her employment with National Fuel on August 11, 1980, ultimately achieving

the position of Senior Serviceman.  Her responsibilities included visiting customers' homes to

investigate suspected gas leaks, as well as servicing gas-fired appliances, gas meters and gas

pipelines.  Foreman Ian Vranich ("Vranich") was plaintiff's direct supervisor from July 13, 2009

through her retirement on October 1, 2012.  Vranich reported to Robert Plewa ("Plewa"), who was

responsible for overseeing the operations of National Fuel's Servicenter in Rush, New York, where

plaintiff was stationed.

In or about October 2009, after Plewa became aware of apparent discrepancies between plaintiff's time sheets and the amount of time expended by others performing the same tasks, Plewa directed Vranich and Senior Foreman Christopher Mazerbo ("Mazerbo") to investigate whether plaintiff's time sheets reflected inflated productivity numbers.

On November 2, 2009, after receiving at least two requests for status updates from Plewa that she felt were unnecessary or impossible to give, plaintiff made a formal complaint to National Fuel's Human Resources department that Plewa was "bullying" her and subjecting her to unreasonable expectations. National Fuel contends that the complaint was investigated, but that there was no evidence that plaintiff was being treated differently from any other employee, or that Plewa's expectations were unreasonable.

On November 5, 2009 after the time sheet investigation was completed, Plewa met with plaintiff and her union steward to review plaintiff's time sheets, which had been found to include a number of discrepancies, double entries, and entries for work that had not been performed. Possible discipline was also discussed.

On December 8, 2009, a National Fuel Superintendent and Labor Relations Manager met with plaintiff and her union representative about the investigation findings, and placed plaintiff on a disciplinary three-day suspension for falsification of company records, from December 9-11, 2009. Following the suspension, plaintiff did not return to work, but took an immediate medical leave of absence through January 11, 2010.

On February 26, 2010, plaintiff responded to an emergency gas leak at a residence, and failed to identify the gas leak, allegedly because she failed to conduct a proper investigation in conformity with National Fuel's practices and procedures. Another Serviceman sent to the home later the same day found the leak and made the necessary repair. Vranich and Plewa met with plaintiff and her union steward on March 2, 2010 to discuss plaintiff's investigation of the gas leak. Plaintiff called in sick to work the next day, and on March 4, 2010, sent an e-mail to several National Fuel executives and employees stating that she believed that she had been subjected to discrimination.

Plaintiff never returned to work, but remained on disability leave from March 3, 2010 until October 1, 2012, when she retired.

On or about July 15, 2010, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that National Fuel had subjected her to an unlawful hostile work environment and disparate treatment in violation Title VII and the NYHRL. On November 28, 2011, the EEOC determined that its investigation had been unable to conclude that any statutory violation occurred, and issued plaintiff a right-to-sue letter. This action followed.

## DISCUSSION

### I.    Summary Judgment in Discrimination Cases

When deciding a motion for summary judgment brought pursuant to FED. R. CIV. PROC. 56, a court's responsibility is to determine whether there remain any issues to be tried. *Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir.2001). Summary judgment should be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The general principles regarding summary judgment apply equally to discrimination actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993))(reiterating that trial courts should not "treat discrimination differently from other ultimate questions of fact."). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)(summary

judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

Where, as here, the party opposing summary judgment is proceeding pro se[1], the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999). Nevertheless, "proceeding pro se does not otherwise relieve [an opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *5 (S.D.N.Y. 2003). *See also Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to pro se pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

Furthermore, to defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

Summary judgment is warranted here in favor of defendant. As will be discussed, below, there is no evidence to support plaintiff's claims of discriminatory action on the part of her employer. Rather, the facts demonstrate that plaintiff was reasonably suspected by her employer to have falsified time records, failed to comply with the employer's request for verification of her time

---

[1]At the time this action was commenced, plaintiff was represented by counsel. Her attorney was subsequently suspended from practice, and plaintiff is presently proceeding *pro se.*

records, and failed to perform her job responsibilities by failing to detect a gas leak on one particular occasion. The actions of the employer relative to all these matters was reasonable to say the least, and in any event, were clearly not occasioned by any discriminatory intent or animus.

## II.     Plaintiff's Discrimination Claims

### A.     Hostile Work Environment

Plaintiff alleges that she was subjected to a hostile work environment when she was "bullied" by Plewa when he asked her for routine status updates concerning her performance of assigned tasks, reprimanded her for poor performance, and/or subjected her to unreasonably high expectations with regard to her performance.

To establish a hostile work environment claim, a plaintiff must prove that "the workplace [was] permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). With regard to claims of gender-based harassment, the evidence must demonstrate "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* . . . because of . . . sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted) (emphasis in original). In contrast, the "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII" or state law. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotations marks omitted). *See also Espaillat v. Breli Originals, Inc.*, 227 A.D.2d 266, 268 (1st Dept. 1996) (applying same principles to hostile work environment claims under the NYHRL).

In evaluating whether conduct arises to the level of a hostile work environment, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."   *Harris*, 510 U.S. 17 at 23.

Here, although her complaint accuses Plewa of "screaming," "berating," "belittling" and "taunting her," plaintiff does not describe the specific verbiage or conduct at issue, and offers no evidence of any gender-related words or behavior by Plewa.

Where, as here, the comments and conduct alleged and/or proved are entirely gender-neutral, plaintiff has failed to adequately plead, let alone raise a triable question of fact concerning, a hostile work environment claim. *See Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 15-16 (2d Cir. 2013) (affirming district court's dismissal of plaintiff's hostile work environment claim, where plaintiff did not allege sexually explicit behavior or comments of a gender-specific nature); *Raum v. Laidlaw Ltd.*, 1999 U.S. App. LEXIS 8219 (2d Cir. 1999) (unpublished opinion) (affirming district court's dismissal of Title VII hostile work environment claim for failure to state a claim, because although plaintiff alleged that his supervisor repeatedly subjected him to obscene gestures and comments which were not "tinged with offensive sexual connotations [and did not] suggest that [plaintiff] was being targeted based on his gender"); *Edwards v. New York State Unified Court System*, 2012 U.S. Dist. LEXIS 172207 at *12, *14-*15 (S.D.N.Y. 2012) (dismissing hostile work environment claim, because plaintiff's allegations that her supervisors "told her to work all day, yelled at her, and closely monitored her" don't describe conduct that is sufficiently severe or pervasive to state a claim); *Rissman v. Chertoff*, 2008 U.S. Dist. LEXIS 101514 at *8-*9 (S.D.N.Y. 2008) ("[i]n essence, plaintiff alleges that because he was yelled at [by his supervisors], this must have been because [of his protected status]. Such conclusory and speculative statements are insufficient [to state a hostile work environment claim]"). Although "[n]othing in our Title VII jurisprudence . . . requires a plaintiff to append to each allegation of harassment the conclusory declaration 'and this was done because of my sex,'" courts do require "the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile

work environment *because of her sex*."  *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001) (emphasis added).

Furthermore, it is well-settled that a supervisor's mere criticism of an employee's work, even when loud or belittling, does not fall within the ambit of Title VII unless his conduct is so severe, pervasive, offensive and "permeated with discriminatory intimidation" as to alter the terms and conditions of his subordinate's employment. *Harris*, 510 U.S. 17 at 21.  *See Marshall v. N.Y. City Bd. of Elections*, 322 Fed. Appx. 17, 18-19 (2d Cir. 2009) (unpublished opinion) (affirming district court's grant of summary judgment on plaintiff's hostile work environment claim, because although plaintiff's "allegations that her supervisor displayed a violent temper, stood over her with clenched fists on several occasions, disparaged her educational background, and engaged in crass behavior are troubling," Title VII "prohibits only harassment that is discriminatory"); *Castro v. N.Y.C. Bd. of Educ. Pers. Dir.*, 1998 U.S. Dist. LEXIS 2863 at *21 (S.D.N.Y. 1998) ("although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions"); *Benette v. Cinemark U.S.A., Inc.*, 295 F. Supp. 2d 243, 250 (W.D.N.Y. 2003) ("[t]he nation's workplace is most likely populated with abusive, banal, profane and vulgar supervisors [who] use insensitive, profane and vulgar language toward employees.  Such evidence, though is insufficient to make out a claim for discrimination").

Affording plaintiff every favorable inference due to her as a pro se litigant and a nonmovant, plaintiff has failed to raise a question of fact concerning her unsupported contention that she was exposed to a hostile work environment and/or discriminatory oversight by her supervisor on the basis of sex.  That claim is dismissed.

## B.  Disparate Treatment

Plaintiff's claims of employment discrimination pursuant to Title VII and the NYHRL are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, plaintiff must establish  a prima facie case of discrimination by demonstrating:

(1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). Once plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center*, 509 U.S. 502 at 508.

In order to constitute an adverse employment action for purposes of discrimination claims under Title VII and the NYHRL, "an employer's action must amount to a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Ghent v. Moore*, 519 F. Supp. 2d 328, 335 n.4 (W.D.N.Y. 2007).

Here, the only adverse action suggested by the evidence is the three-day unpaid suspension upon which plaintiff was placed from December 9-11, 2009.[2]

In deference to the plaintiff's pro se status, the Court has carefully considered the pro se plaintiff's sole submission in opposition to the pending motion – a lengthy unsworn statement in which sets forth in painstaking detail plaintiff's employment history with National Fuel and the bases – both factual and speculative – for her claims. (Dkt. #26). Construing all reasonable inferences in plaintiff's favor, the Court finds that even if plaintiff's statement were credited as admissible testimony (which it is not), no reasonable finder of fact could conclude that plaintiff's suspension, or the investigation that precipitated it, occurred under circumstances giving rise to an inference of

---

[2] Although plaintiff's opposition papers also make reference to allegedly inconvenient or harassing phone calls from Vranich to remind her of return-to-work paperwork submission deadlines while she was on medical leave, and to the meeting concerning plaintiff's allegedly botched gas leak investigation for which she was never disciplined because she went out on medical leave the very next day, the facts related do not plausibly allege – let alone demonstrate – that any of these actions caused a materially adverse change in the terms and conditions of plaintiff's employment. As such, they are not adverse employment actions within the meaning of Title VII or the NYHRL.

discrimination, and/or that there is evidence of discrimination sufficient to rebut National Fuel's legitimate, nondiscriminatory reason for plaintiff's three-day suspension. Indeed, the record contains no evidence whatsoever that the investigation or suspension were motivated by discriminatory animus related to plaintiff's gender.

Although direct evidence of discriminatory motive is not necessary to survive summary judgment, plaintiff must produce at least some circumstantial evidence that shows discriminatory animus. *See Schwapp*, 118 F.3d at 110. *See also Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988) (even where a *prima facie* case is established, conclusory assertions of discrimination are insufficient to create an issue of material fact as to pretext). There is simply no evidence that the time sheet investigation or the suspension that resulted therefrom were motivated by discriminatory animus. For example, plaintiff identifies no male comparators who falsified time sheets, or who were suspected of doing so, and were treated differently by National Fuel in general, or by Plewa in particular. (For his part, Plewa testified that plaintiff is the only employee he has ever supervised who was discovered to have falsified time sheets). (Dkt. #15-6 at ¶12). Moreover, it is undisputed that plaintiff admitted, when confronted by National Fuel, that her time sheets were inaccurate.[3] *See e.g.*, *Jones v. Yonkers Public Schools*, 326 F.Supp.2d 536, 53-544 (S.D.N.Y. 2004) (misconduct, poor performance, and violation of employer's rules and procedures are legitimate, non-discriminatory reasons for termination); *Gomez v. Pellicone*, 986 F. Supp. 220, 228 (S.D.N.Y. 1997) (excessive lateness and poor performance are legitimate, nondiscriminatory reasons for termination). As such, I find that plaintiff has failed to set forth evidence which would support an inference of

---

[3] Plaintiff claims in conclusory fashion in her opposition to the instant motion that the documentary evidence concerning National Fuel's investigation has been fabricated or altered, and that the investigation was in fact retaliatory or discriminatory. However, plaintiff's speculation to this effect is unsupported by any evidence of record, and runs contrary to the evidence that has been submitted, including plaintiff's own deposition testimony, which was taken while she was still represented by counsel (Dkt. #15-4 at 81 et seq.), the testimony of Plewa (Dkt. #15-6), and copies of the time sheets in question (Dkt. #15-5, Exh. B-H), all of which indicate that a number of plaintiff's time sheet entries were inflated and inaccurate.

discrimination, or which is capable of rebutting National Fuel's legitimate, nondiscriminatory reason for plaintiff's brief suspension –her submission of inaccurate time sheets.

### III.   Retaliation

Claims of retaliation are also analyzed under the familiar *McDonnell Douglas* burden-shifting rules. *McDonnell-Douglas Corp.*, 411 U.S. 792. *See Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999).  To set forth a *prima facie* claim for retaliation, plaintiff must show:  (1) that she participated in a protected activity; (2) that her employer knew of the protected activity; (3) that she suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's protected activity and the adverse employment action.  *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000).  Once plaintiff makes out a *prima facie* case of retaliation, the burden shifts back to the defendant employer to show that there was a legitimate, non-retaliatory reason for its actions.  If the employer meets its burden, the burden returns to the plaintiff to show that "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Richardson*, 180 F.3d at 443 (citing *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998)).  Protected activity includes actions taken to report, oppose or protest unlawful discrimination, including complaints of discrimination to the employer, and the filing and pursuit of administrative charges.  *See Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

Here, plaintiff claims that she engaged in protected activity when she complained to Human Resources on or about November 2, 2009 that she was being "bullied" by Plewa because his performance expectations were unreasonable and/or because he reprimanded her for poor performance.  However, plaintiff has produced no evidence of any complaint, formal or informal, sufficient to have placed National Fuel on notice that by complaining about Plewa's "bullying" she was referring to discriminatory activity, nor does any of the submitted evidence suggest that Plewa's conduct was related to plaintiff's gender in any way, or even that plaintiff believed that it was.  To

the contrary, plaintiff testified at her deposition that when Human Resources employee Valerie Hawthorn asked her about the nature of her complaint, plaintiff explicitly told Hawthorn that her "complaint was one of bullying, *not of discrimination*." (Dkt. #15-4 at 122:17-21) (emphasis added). Moreover, nothing in the words used by plaintiff to describe Plewa's conduct ("bullying," "disrespecting," "intimidating," "condescending," "lost his composer [sic]," "screaming," "stern," "badgering") (Dkt. #15-4 at 120, Dkt. #15-5, Exh. N at 2) would have indicated that her complaint related to gender-based discrimination.

Because nothing in the substance or delivery of plaintiff's complaint of generalized "bullying" or "unreasonable" performance expectations could possibly have placed National Fuel on notice that plaintiff was complaining about unlawful discrimination, no reasonable finder of fact could conclude that her November 2, 2009 complaint about Plewa's "bullying" constituted protected activity. *See Foster v. Humane Society of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 394-395 (W.D.N.Y. 2010) (in order to allege that complaints to management comprised protected activity, a plaintiff must allege that she complained about acts of discrimination, and not other issues or work-related problems outside the scope of anti-discrimination statutes); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521-22 (S.D.N.Y. 2010) (while a plaintiff alleging gender-based discrimination "need not have explicitly used the words 'discrimination' or 'gender' to afford [her] complaints protected activity status," if the protected activity "does not lend itself to a reasonable inference of unlawful discrimination, such 'magic words' may be the only way to put the employer on notice that the employee believes [her]self to be complaining of discriminatory conduct") (citation omitted). *See also Sharpe v. MCI Communications Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010).

Accordingly, the retaliation claim is dismissed.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Dkt. #15) is granted, and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        May 19, 2014.

- 12 -